# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1553 | **DATE** | 8/17/2004 |
| **CASE TITLE** | John Ebert vs. Charles L. Hinsley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, petitioner's petition for habeas corpus relief is dismissed and case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 18 2004 | |
| | Notified counsel by telephone. | | date docketed | 16 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 8/17/2004 | |
| MD | courtroom deputy's initials | 2004 AUG 17 PM 3:52 | date mailed notice | |
| | | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
AUG 1 8 2004

| | |
|---|---|
| UNITED STATE OF AMERICA ex rel. JOHN EBERT, <br><br> Petitioner, <br><br> v. <br><br> CHARLES L. HINSLEY, Warden[1] <br><br> Respondent, | No. 03 C 1553 <br> Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

On August 14, 1998, following a jury trial in the Circuit Court of Cook County, Illinois, petitioner John Ebert ("Ebert") was convicted of two counts of first-degree murder and one count of armed robbery. He was sentenced to natural life in prison for the murder convictions, plus a concurrent thirty years for the robbery conviction. On March 3, 2003, Ebert filed his petition for a writ of habeas corpus with this court pursuant to 28 U.S.C. § 2254, alleging that the state presented insufficient evidence for the jury to return a guilty verdict, that he suffered from ineffective assistance of counsel and that the Illinois statute, under which he was sentenced to a term of natural life in prison, is unconstitutional. For the reasons stated below, his petition is denied in its entirety.

---

[1]Charles L. Hinsley is the current Warden as the Menard Correctional Center and is thus the proper respondent in this habeas corpus action. *See* Rule 2(a) of the Rules Governing Habeas Corpus cases under 28 U.S.C. § 2254. Therefore, the court substitutes Hinsley as the respondent. *See* Fed. R. Civ. Pro. 25(d)(1).



# HABEAS STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court must deny Ebert's petition for a writ of habeas corpus with respect to any claim adjudicated on the merits in the state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d); *Price v. Vincent*, 538 U.S. 634 (2003). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

A state court's decision is an unreasonable application of clearly established Supreme Court law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.").

Before reviewing the state courts' decisions, however, the court must determine whether

Ebert fairly presented his federal claims to the state courts, as any claim not presented to the state's highest court is deemed procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). Moreover, "[a] federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Anderson v. Cowan*, 227 F.3d 893, 899 (7th Cir. 2000).

## BACKGROUND

### A. Procedural History

Ebert was originally convicted of two counts of first-degree murder and two counts of armed robbery on November 5, 1993. This conviction was overturned by the Illinois Appelate Court and remanded for a new trial on the grounds that he was denied effective assistance of counsel. Following a second jury trial, Ebert was convicted in the Circuit Court of Cook County of two counts of first-degree murder and one count of armed robbery on August 14, 1998. He was sentenced to imprisonment for his natural life for the murder convictions and thirty years for the armed robbery conviction, to be served concurrently. Ebert appealed his conviction, arguing that (1) the state did not establish his guilt beyond a reasonable doubt; (2) his purported confession was insufficient to support the jury's verdict; (3) his trial counsel's failure to attempt to suppress his purported confession amounts to ineffective assistance of counsel; and (4) the

prosecution prejudiced him by making unfounded and inflammatory comments in closing argument. On February 29, 2000, the Illinois Appellate Court affirmed the judgment on direct appeal. Ebert petitioned the Illinois Supreme Court for leave to appeal, raising issues 1-3 above. The Illinois Supreme Court denied his petition on May 31, 2000.

On April 24, 2001, Ebert filed a petition for post-conviction relief with the Circuit Court of Cook County. On May 17, 2001, the Circuit Court denied Ebert's petition and on September 23, 2002, the Illinois Appellate Court affirmed the denial. On February 5, 2003, the Illinois Supreme Court denied Ebert's petition for leave to appeal. On March 3, 2003, Ebert filed a habeas petition with this court. Because this petition was filed within one year after the conclusion of his Illinois post-conviction proceedings, this court has jurisdiction to consider Ebert's habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A); *Gray v. Briley*, 305 F.3d 777, 777-78 (7th Cir. 2002).

**B. Facts**

When considering a habeas petition, the court must presume that the state courts' factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). Ebert has not presented clear and convincing evidence to rebut this presumption. Therefore, the court adopts the Illinois Appellate Court's recitation of facts in *People v. Ebert*, No. 1-98-3650, slip op., at 3-8, 10-12 (1st Dist. 2000) (unpublished order) (Resp. Ex. D.)

In his confession, Ebert stated that on March 1, 1992 at about 5:00 a.m. he and James "Ike" Maynard ("Maynard") were on the street outside the second-floor apartment shared by Bobby English ("English") and the victims, Frank Svec ("Svec") and Albert Jevorutsky

4

("Jevorutsky"). Ebert called up to English to let him in and, after English did so, the two of them watched television while Svec and Jevorutsky slept in their bedrooms. A short time later, Maynard, who resided downstairs at the first-floor apartment with his girlfriend, Sharon Brasher, and her children, called up to Ebert and English asking to be let in as well. After he was let in, Maynard told Ebert and English that he needed money and proposed that the three of them rob Svec and, if necessary, kill him. Ebert agreed that they should rob Svec.

Thereafter, Ebert went into Svec's room and began looking through drawers. Svec woke up and began shouting at him. At this point, Ebert chased Svec out into the main room of the apartment, whereupon Maynard began to beat Svec, knocked him to the floor and began to kick him in the head. Ebert returned to Svec's room to continue the search for money. English then entered Svec's room and took some coins he found there. Next, Ebert heard Jevorutsky screaming, stepped out of Svec's room and saw that Maynard was now in Jevorutsky's room kicking him. Ebert returned to Svec's room with English and continued the search for money. Maynard entered Svec's room and Ebert showed him a drawer full of knives. Maynard took one and he and English went back to Jevorutsky's room.

Ebert found $900 in Svec's room. He, English and Maynard split the money evenly. English then gave Ebert a white plastic bag with knives in it and told him to throw it away. Before leaving, Ebert suggested they break an entry door lock to make the crime appear to be a robbery and Maynard then broke the lock. The three men agreed to meet later at White Castle restaurant, and Ebert threw the bag that English gave him into the city dump en route.

The following afternoon the police found the bodies of Svec and Jevorutsky in the apartment. Autopsies revealed the men had died of multiple stab and incise wounds. The police

5

found the rooms of Svec and Jevorutsky to be in complete disarray, while English's room was neat and orderly. They further discovered that a lock on Jevorutsky's bedroom door had apparently been forced open. The police also found three knives in Jevorutsky's room, one in a chair at the foot of the bed and two under Jevorutsky's body.

Sharon Brasher's testimony corroborated Ebert's confession in part and refuted it in part. She testified that in the early morning of March 1 her daughter let Maynard into her apartment; he was covered in blood and said he had just killed two people. He threw $300 dollars on the floor and then changed clothes, washed up and left the apartment. Ms. Brasher followed him out and saw Ebert facing the building and calling out Svec's name. However, Ms. Brasher testified that these events took place between 2:30 and 3:00 a.m., in conflict with the time frame of Ebert's confession.[2] Ms. Brasher further testified that a couple days after these events, she, English, Maynard and another woman went to a motel to drink and use cocaine. On the way home the following day, they all went to a nearby Taco Bell restaurant, where English retrieved a pillowcase full of coins from under a stairwell.

Sharon Brasher's son Michael Brasher ("Michael") testified that his mother was "kind of drunk" in the early morning hours of March 1 after having been drinking at a nearby Mardi Gras celebration until 11:00 p.m. the night before. Michael also testified that at 2:00 a.m. he saw English and Maynard attempting to gain access to the second-floor apartment via a locked door in the first-floor apartment that led to a stairwell, but he did not see if they actually did gain

---

[2]In addition, two other witnesses testified that between 10:00 p.m. on February 29 and 3:45 a.m. on March 1 Ebert was at or near a local bar and could not have been on the street with Maynard.

access through that door.[3]

## DISCUSSION

Ebert's section 2254 petition raises the following four claims: (1) the state did not establish his guilt beyond a reasonable doubt; (2) his purported confession was insufficiently reliable to support the jury's verdict; (3) his trial counsel's failure to make any attempt to suppress his purported confession amounted to ineffective assistance of counsel; and (4) the Illinois statute under which he was sentenced to natural life in prison is unconstitutional under the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

A. Claims 1 and 2

Claims one and two both allege that the state presented insufficient evidence to prove Ebert guilty beyond a reasonable doubt. In federal habeas corpus review, a petitioner may establish a violation of due process on a claim of insufficient evidence only when, viewing the evidence in a light most favorable to the prosecution, no rational trier of fact "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). Ebert raised this claim on direct review, arguing that his confession, the state's key evidence against him, was contradicted by the testimony of several witnesses and, therefore, was not sufficiently reliable to support his conviction. The appellate court addressed the law on confessions and noted that a murder conviction founded upon a confession must be "corroborated by some evidence, exclusive of the confession, tending to show that a crime did occur and that the defendant committed it." *People*

---

[3]English had just moved his possessions into the second-floor apartment a few days prior to March 1 and did not yet possess a key to the apartment.

v. *Pecoraro*, 144 Ill. 2d 1, 10; 578 N.E.2d 942, 945 (1991). In Illinois this requirement of corroborative evidence is satisfied by the *corpus delicti*, the fact of death and the fact that death was caused by the criminal agency of some person. *Id.* The Medical Examiner testified that Svec and Jevorutsky died as a result of multiple stab wounds and had defensive wounds. (Resp. Ex. D p. 10.) Ebert confessed to participating in the murder. Consequently, the appellate court found that Ebert's confession, along with the fact that Svec and Jevorutsky were dead and that death was caused by the criminal agency of another is sufficient to support a conviction in Illinois, even without other corroborative evidence. (Resp. Ex. D p. 10.)

Ebert argues that his confession was contradicted by independent evidence in several respects and, therefore, cannot support a jury's conviction beyond a reasonable doubt. Specifically, he points to Sharon Brasher's testimony that Maynard came to her apartment before 3:00 am covered in blood and stating he had just killed two people; Michael Brasher's testimony that Maynard and English tried to enter the stairwell leading to Svec and Jevorutsky's apartment at about 2:00 am; the fact that in his own confession he stated that Maynard broke an entry door lock, but in fact, the bedroom door lock was broken; and the fact that knives used in the murders were recovered at the scene, contrary to his confession, in which he stated that he disposed of the knives in the city dump.

The Illinois Appellate Court considered this conflicting testimony and determined there was "sufficient evidence for a rational jury to find [Ebert] guilty." (Resp. Ex. D p. 10.) The court noted that in Illinois "there is no requirement that the independent evidence and the details of a confession correspond in every particular." *People v. Mendoza*, 208 Ill. App. 3d 183, 204; 567 N.E.2d 23, 37 (1991). Where independent evidence conflicts with the confession, the jury is

free to believe or disbelieve it. *Id.* In viewing the evidence in the light most favorable to the prosecution, the court found that Sharon Brasher may have been mistaken or lied about the time Maynard arrived at her apartment; Maynard and English's attempt to gain entry to Svec and Jevorutsky's apartment at 2:00 am did not preclude them from murdering the victims three hours later; Ebert may have been confused about exactly which lock Maynard was breaking; and Ebert may have been mistaken about how many knives were used in the murders or he may have actually attempted to hide the knives under Jevorutsky's body rather than throwing them in the city dump as he stated in his confession. (Resp. Ex. D pp. 10-13.)

The Illinois Appellate Court pointed out that other aspects of the confession were corroborated by independent evidence. For instance, the location of the bodies, the division of the stolen money, the theft of a bag of coins and the fact that a lock was broken all corroborate Ebert's confession. (Resp. Ex. D p. 13.) The court pointed to sufficient evidence from which a jury could conclude that Ebert committed murder and armed robbery, and Ebert falls far short of the strict *Jackson* standard that "no rational trier of fact" could have found him guilty. Therefore, claims one and two are denied.

B. Claim 3

In his third claim, Ebert asserts that his trial counsel was ineffective because he failed to make any attempt to suppress Ebert's confession. Ebert believes the police did not have proper probable cause to arrest him on suspicion of murder and, therefore, the confession he made subsequent to the arrest was inadmissible fruit of an unlawful arrest. In his first trial, Ebert's counsel moved to have the confession suppressed on these grounds. At the hearing on the motion on March 8, 1993, Officer Graf of the Chicago Police Department testified that the

decision to arrest Ebert was based in part on statements made by Delores Esparza ("Esparza") regarding a conversation she overheard between Sharon Brasher, Maynard, English and Ebert. (Habeas Pet. p. 17.) After the first trial, Ebert's counsel came into possession of statements by Esparza contradicting Officer Graf's testimony and yet did not move to have Ebert's confession suppressed during the second trial. Ebert believes this inaction constituted ineffective assistance of counsel.

The Illinois Appeals Court properly identified the two-part test employed in ineffective assistance of counsel claims. (Resp. Ex. D p. 14.) It stated that Ebert was required to show that his trial counsel's representation fell below an objective standard of reasonableness and that a reasonable probability existed that the result of the proceedings would have been different absent this inadequate representation. *Strickland v. Washington*, 466 U.S. 668 (1984). The appellate court focused its consideration on the second prong of the *Strickland* test, whether Ebert's counsel's inaction, even if deficient, was so unreasonable that a reasonable probability existed that the outcome would have been different if his representation had not been deficient. (Resp. Ex. D p. 16.) The court found that the police relied not only on the statements of Esparza, but also statements by Michael Brasher, who had been found reliable at the previous hearing. (*Id.* at 17.) Additionally, the court found that the later statements of Esparza would not negate the earlier testimony of Officer Graf that she had told him she overheard a conversation about a murder. (*Id.*) The court held that Ebert had not demonstrated there was any reasonable probability that the final result would have been substantially different if his counsel had moved to suppress his confession at the second trial. (*Id.* at 16.)

The holding of the state appellate court is further supported by the ruling of the Seventh

Circuit in *Holman v. Page*, 95 F.3d 481, 488 (7th Cir. 1996). In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court ruled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id.* at 494. A petitioner is provided, however, a "narrow walkway" to raise Fourth Amendment issues "through the back door via a Sixth Amendment claim that his attorney's handling of the issue . . . was incompetent." *Holman*, 95 F.3d at 489 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986)). The focus is on "not whether the Fourth Amendment issue was properly decided, which *Stone* precludes on habeas review, but whether the defendant was denied his Sixth Amendment right to competent counsel." *Id.*

The issue here is whether Ebert's trial attorney was ineffective because he failed to move to suppress the confession obtained subsequent to Ebert's allegedly unlawful arrest. Under *Strickland*, Ebert was required to show both "(1) deficient performance and (2) prejudice." *Id.* at 490 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)). In Fourth Amendment cases, the "prejudice" prong of the *Strickland* test "is not met 'if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.'" *Id.* (quoting *Fretwell*, 506 U.S. at 372). The Seventh Circuit has expressly ruled that under *Strickland* "no prejudice exists when evidence gathered in violation of the Fourth Amendment is erroneously admitted at trial." *Id.* at 492. "It is inconsistent with the function of the exclusionary rule to permit a criminal defendant on federal habeas review to claim prejudice because but for counsel's incompetence on the suppression issue he would have gotten away with the crime." *Id.* at 491. Instead, a counsel's alleged ineffective assistance at a suppression hearing on a Fourth

11

Amendment issue can only be relevant to counsel's "overall incompetence" and must render the proceedings "unfair or unreliable." *Id.* at 492.

Based on *Holman,* even if Ebert were able to show that his trial counsel's performance was deficient for failing to move to suppress his confession, he could not make out the second required element of the *Strickland* test, prejudice. Ebert complains that his counsel's failure to investigate Esparza's later statements cost him the chance to suppress evidence based on the exclusionary rule. Under controlling law, this is not sufficient to establish prejudice under *Strickland.* Additionally, there is no evidence that the handling of the Fourth Amendment issues at the suppression hearing was otherwise evidence of "overall incompetence" rendering the proceedings unfair or unreliable. Accordingly, no relief can be afforded to Ebert under claim three.

## C. Claim 4

Ebert's fourth and final claim is that his sentence violated the Supreme Court's opinion in *Apprendi,* because he was sentenced to natural life in prison under a statute he believes *Apprendi* made unconstitutional. This claim must fail because Ebert was sentenced well before June 26, 2000. *Apprendi* does not apply retroactively on collateral review. *See, e.g., Curtis v. United States,* 294 F.3d 841, 844 (7th Cir. 2002) (*"Apprendi* therefore does not disturb sentences that became final before June 26, 2000, the date of its release."). As such, Ebert's request for relief on this claim must be denied.[4]

---

[4] Ebert attempts to raise an additional claim, rooted in Illinois statutory construction, in his "Traverse to the Respondent's Answer" to support his petition. This claim was not raised in either Ebert's direct appeal or his post-conviction proceedings. Accordingly, it is procedurally defaulted. *See, e.g., O'Sullivan,* 526 U.S. at 844-45 ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide necessary relief.").

## CONCLUSION

Wherefore, for all the above stated reasons, the court concludes that Ebert is not entitled to habeas relief. This case is terminated.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: August 17, 2004